IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHERYL ANDERSON,

    Petitioner,

v.                                     No.    CV 12-1025 MCA/WPL
                                                                    CR 10-0086 MCA

UNITED STATES OF AMERICA,

    Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    Sheryl Anderson filed a petition for habeas corpus pursuant to 18 U.S.C. § 2255 (Doc. 1; Doc. 15)[1] alleging judicial bias during sentencing and ineffective assistance of counsel. The Court referred this case to me to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 3.) Having reviewed the pleadings, record, and relevant law, I recommend that the Court deny Anderson's petition and dismiss this case with prejudice.

**Factual Background**

    Anderson was arrested on January 21, 2010, in connection with the theft of over two hundred firearms, thousands of rounds of ammunition, and two motor vehicles from her brother's storage sheds in New Mexico. (Doc. 15 Ex. 2 at 2, 5, 8.) On April 13, 2011, a federal grand jury returned a Second Superseding Indictment that charged Anderson with the following counts: (1) conspiracy to knowingly possess a stolen firearm; (2) knowing possession of a stolen firearm; (3) conspiracy to knowingly ship or transport a stolen firearm; (4) knowingly shipping

---

[1] All citations to "Doc." are to documents filed in Anderson's civil case, 12cv1025 MCA/WPL.

or transporting a stolen firearm; (5) shipment or transport of a stolen firearm by a person under indictment; and (6) interstate transportation of a stolen motor vehicle. (*Id*. at 5-6; Doc. 16 at 1-2.)

On June 29, 2011, Anderson pled guilty to Count Four of the Second Superseding Indictment, knowingly shipping or transporting a stolen firearm, pursuant to a plea agreement signed in open court before United States District Judge Bruce Black. (Doc. 16 at 2; Doc. 16 Ex. 1.) The terms of the plea agreement had been negotiated by Anderson's defense counsel, Robert Gorence, and Anderson was represented by Gorence at the plea hearing and the subsequent sentencing hearing. The terms of the final plea agreement included a maximum term of imprisonment for ten years, a maximum fine of $250,000.00, one year of supervised release, a mandatory special penalty assessment of $100.00, and the payment of restitution. (Doc. 16 Ex. 1 at 3.)

During the plea colloquy, Judge Black asked Anderson if she had reviewed the plea agreement and if she had adequate time to review the agreement with her attorney. (Doc. 16 Ex. 3 at 5-6.) Anderson stated that she had. (*Id*.) Judge Black then asked Anderson if she understood the terms of the sentence, and after Anderson affirmed that she understood them, he asked if she had any questions about the terms, highlighting that she could be imprisoned for up to ten years. (*Id*. at 8.) Anderson did not have any questions about the terms of the plea. (*Id*.) In response to Judge Black's questions, Anderson clarified that no one had forced her to plead guilty, nor had anyone made any promises to her. (*Id*.) Turning to Gorence, Judge Black asked if he believed it was in Anderson's best interest to plead guilty, and Gorence affirmed that he believed it was in her best interest since "a jury had a substantial possibility of convicting her" of the crimes alleged. (*Id*. at 12.)

After Anderson entered her guilty plea, Judge Black asked whether the facts contained in the plea agreement were true, but Anderson countered that they were not since some of the facts had been changed, as indicate by the hand-written changes on the agreement. (*Id*. at 13.) Judge Black then asked if the facts were true with the changes, and she conceded that they were. (*Id*. at 13-14.) Judge Black accepted her guilty plea and found that it was free and voluntary and that Anderson fully understood the charges and penalties. (*Id*. at 14.)

The District of New Mexico's Probation Office compiled a Presentence Investigation Report ("PSR") that outlined the events of the crime, Anderson's personal history, and a calculation of Anderson's offense level and criminal history. (Doc. 15 Exs. 2 & 3.) The PSR reported that Anderson was raised in Albuquerque, New Mexico, where she had a "great" childhood. (Doc. 15 Ex. 3 at 4-5.) Anderson's father had owned the Clinton P. Anderson insurance agency, and her parents had always provided for her. (*Id*.) At the time the PSR was prepared, Anderson had $2,603,476 held in trust and $243,562 in liabilities, with a total net worth of $2,359,824. (*Id*. at 10-11.) Using the sentencing guidelines, the PSR determined that Anderson's offense level was thirty-four and that she had a criminal history of two, so the guideline range was between one hundred sixty-eight and two hundred ten months. (*Id*. at 12.) However, the plea agreement contained a maximum term of ten years, or one hundred twenty months. (*Id*.) Outside of noting that the plea agreement contained a maximum term of ten years, the PSR did not recommend any departures from the guideline sentence. (*Id*. at 15.)

An addendum to the PSR contained a letter from Anderson accepting responsibility for her actions. (Doc. 16 Ex. 2.) In the concluding paragraph of the letter, Anderson acknowledges, "I know I have had a privileged life." (*Id*. at 3.) In a separate letter, Anderson indicated that she had been sexually assaulted twice as a teenager. (*Id*. at 5.)

3

Gorence filed a sentencing memorandum on behalf of Anderson a week before the sentencing hearing. (Doc. 15 Ex. 4.) Anderson did not dispute the sentencing guidelines computation as outlined in the PSR, but she did argue that the maximum term of ten years over-represented her culpability and would result in a gross sentencing disparity between her and her four co-defendants. (*Id.* at 1.) Relying on 18 U.S.C. § 3553(a)(6), Anderson argued that the Court should avoid sentencing disparities among defendants with similar records who have been found guilty of similar conduct. (*Id.*) She argued that she is similarly situated with her co-defendants, and since her co-defendants had received sentences of three, four, and six years,[2] she should receive a sentence of three to four years. (*Id.* at 2.)

The United States filed a response to the sentencing memorandum urging the Court to impose the maximum sentence of ten years' imprisonment. (Doc. 15 Ex. 5.) It disputed Anderson's contention that she should receive a lesser sentence in order to avoid a disparity with her co-defendants on the ground that they are not similarly situated. (*Id.* at 2.) Specifically, the United States argued that Anderson was the group leader[3] and had refused to cooperate with the United States, so she was not entitled to the same leniency. (*Id.* at 2-3.) The United States noted that it attempted to negotiate a plea with Anderson earlier in the proceedings, but she had been unwilling to cooperate. (*Id.* at 3.)

Anderson's sentencing hearing was held on October 12, 2011, before Judge Black. (Doc. 15 Ex. 1.) Neither party challenged the factual statements in the PSR, and both re-iterated the arguments in their sentencing memoranda. (*Id.*) While arguing to the Court that Anderson was similarly situated with her co-defendants, Gorence addressed the United States' mention of prior

---

[2] Anderson's fourth co-defendant had not been sentenced at the time of her sentencing. (Doc. 15 Ex. 4 at 2.)

[3] Anderson vehemently disagreed with the United States' characterization of her as the leader of the crime. (Doc. 15 Ex. 1 at 4-8; Doc. 15 Ex. 4 at 3.)

4

attempts to negotiate a plea agreement. (*Id*. at 8-9.) Gorence explained that the first offer was for ten years and the second was for fifteen years, and he did not believe that either were acceptable offers because they required her full cooperation and the other co-defendants were entering into more favorable plea agreements. (*Id*.) The United States countered that Gorence had made it clear that Anderson wanted to go to trial "right from the get-go" and to "forget about pleas." (*Id*. at 14.) It did not refute Gorence's characterization of the terms of the agreements and confirmed that the second offer was for fifteen years. (*Id*. at 15.) The United States believed Anderson had arranged the theft and explained that it would benefit from Anderson's cooperation to locate the remaining stolen guns. (*Id*. at 15-24.)

After oral argument, Anderson apologized to the Court, and Judge Black pronounced Anderson's sentence. At the outset, Judge Black noted that he had considered the factors set out in § 3553 and that both sides made very different presentations of the facts and the extent of Anderson's involvement in the crime. (*Id*. at 28.) He did not believe that the factors benefitted Anderson since "the nature and circumstances of the offense . . . are horrendous." (*Id*.) He commented that she had had a "privileged upbringing" and "she would know better than to be doing something like this." (*Id*. at 29.) He opined that Anderson's and her co-defendant's crimes were "extremely serious" and made the following comparison:

> I have repeatedly in recent days been required to sentence people who are looking at child porn to the mandatory minimum of 10 years. This is in no way comparable to that situation, frankly. They cause no harm to anyone. The harm has been done. And I understand the marketing theory of that. But here we have people that we can prove have been killed by these weapons. And it would certainly be an easy conclusion to assume that it would be the proximate cause of selling them down on the border in the current situation.

(*Id*.) Based on the factors listed in § 3553(a), and after considering the PSR, the arguments of counsel, and the letters submitted on Anderson's behalf, Judge Black sentenced Anderson to the maximum of one hundred twenty months incarceration. (*Id*. at 29-30.)

On October 1, 2012, Anderson, acting pro se, filed this petition for a writ of habeas corpus pursuant to 18 U.S.C. § 2255. (Doc. 1.) On November 28, 2012, counsel Mike DeGeurin entered an appearance on behalf of Anderson and filed an unopposed motion to supplement the petition (Doc. 12), which I granted (Doc. 13). Anderson timely filed a supplemental motion to vacate, correct, or set aside her sentence that elaborated on some of her previously raised claims. (Doc. 15.) In it, she alleged that Judge Black's comments about her privileged upbringing, the use of the stolen guns to kill people, and the sentences of consumers of child pornography amounted to judicial bias at the sentencing phase and that the bias resulted in a disproportionately high sentence as compared to her co-defendants. (*Id.* at 2-5.) She also brought several claims of ineffective assistance of counsel, attacking Gorence's performance at various stages of the proceedings and concluding that as a result of his constitutionally defective counsel, she did not enter into the plea agreement knowingly or voluntarily. (*Id*. at 5-7.) The United States opposes the motion on the grounds that it is partially barred by the terms of her plea agreement and that she has failed to articulate a constitutional claim. (Doc. 16.) Anderson moved for an extension of time to file a reply (Doc. 20), which I granted (Doc. 21), but her counsel later informed my staff on March 5, 2013, that he would not be filing a reply brief.

## STANDARD OF REVIEW

A petition for a writ of habeas corpus under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citation omitted). Under § 2255, a federal prisoner "may move the court which imposed the sentence to

vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack. " *See* 28 U.S.C. § 2255(a) (2006).

A petition for habeas corpus, like any other pleading, must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). To survive a motion to dismiss, the pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). This standard does not require "detailed factual allegations," but it does require more than bland accusations against the defendant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Typically, pleadings from pro se litigants receive special consideration, and the court will construe the pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008); *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Here, Anderson filed her petition as a pro se litigant but obtained counsel, so I granted her leave to file a supplemental motion. Since she has had an opportunity to file a supplemental motion and since that motion was filed by and through counsel, I will not apply the pro se standard when considering either her first motion to vacate or her supplemental motion.

**DISCUSSION**

**I.     Evidentiary Hearing**

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). Under this standard, "the petitioner bears the burden of 'alleging facts which, if proved, would entitle him to relief.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (citations omitted). Accordingly, if the petitioner alleges facts, which, if believed, cannot be grounds for relief, there is no need for a hearing. *Id.* Additionally, the "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).

Anderson's judicial bias claim is based entirely on statements made on the record during the sentencing hearing on October 12, 2011, so I need not hold a hearing on these claims. Her ineffective assistance of counsel claims may also be resolved on the record alone, so I will not hold an evidentiary hearing in this matter.

**II.    Appellate and Collateral Attack Waivers**

A criminal defendant's waiver of the right to appeal contained in a plea agreement is enforceable so long as he knowingly and voluntarily entered into the agreement. *See United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003); *United States v. Black*, 201 F.3d 1296, 1300 (10th Cir. 2000); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1988). Likewise, a waiver of the right to collaterally attack a sentence through a petition for habeas corpus is enforceable so long as this waiver is also voluntarily and knowingly made. *United*

*States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). To determine whether a waiver is knowing and voluntary, "the court examines whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy." *United States v. Salas-Garcia*, 698 F.3d 1242, 1254 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)). The burden is on the petitioner to prove to the contrary. *Id*. (citing *Hahn,* 359 F.3d at 1329). When the record reveals that the plea clearly states the consequences of a guilty plea and the colloquy at the plea hearing verifies the petitioner's knowledge of those consequences, then the plea is considered knowing and voluntary. *Id*. at 1254-55 (holding a plea that expressly stated deportation was a legal consequence of the conviction and a colloquy that asked if the petitioner understood this consequence was knowing and voluntary).

Even if the plea was knowing and voluntary, the court will not enforce an appellate or collateral attack waiver if it would result in a "miscarriage of justice." *Hahn,* 359 F.3d at 1329. There are four exceptions to the enforcement of appellate waivers: "(1) where the district court relied on an impermissible factor such as race[;] (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid[;] (3) where the sentence exceeds the statutory maximum[;] or (4) where the waiver is otherwise unlawful." *Id*. at 1327 (citing *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)). The burden is on Anderson to show that the enforcement of the waiver would result in such a miscarriage of justice. *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1299 (10th Cir. 2008).

Anderson's plea agreement contains a provision entitled "Waiver of Appeal Rights." (Doc. 16 Ex. 1 at 8.) By accepting this term, Anderson waived her right to appeal the conviction and the imposed sentence so long as the Court did not depart or vary upward from the advisory

9

sentencing guidelines. (*Id.*) She also waived her right to collaterally attack the conviction through a § 2255 petition, "except on the issue of ineffective assistance of counsel." (*Id.*)

Anderson's waiver of her appellate and collateral attack rights is enforceable. The plea agreement clearly states that she entered into the agreement voluntarily and that she waives the right to appeal. (*Id.*) Judge Black also conducted a proper Rule 11 plea colloquy. (Doc. 16 Ex. 3 (asking Anderson questions consistent with FED. R. CRIM. P. 11(b)(1)(A)-(N).) Moreover, Anderson bears the burden of showing that her plea was not knowing and voluntary. She relies on claims of ineffective assistance of counsel, which are without merit, as will be discussed at length below, but she does not raise any additional arguments.

While her waiver is enforceable, I may hear her ineffective assistance of counsel claims since she expressly reserved this right and since it falls under the second exception to the enforcement of waivers. The same cannot be said for her judicial bias claims, as the United States properly raises the waiver as a bar to these claims. (Doc. 16 at 5.)

Anderson alleges that judicial bias at sentencing, as evinced by three different comments made by Judge Black during the hearing, resulted in a longer term of imprisonment. Although this circuit has not fully considered the impact of a waiver on a claim of judicial bias at sentencing, an unpublished decision held that a judicial bias claim brought in a habeas petition is barred by a collateral attack waiver. *United States v. Carver*, 349 F. App'x 290, 294 (10th Cir. 2009) (unpublished). While *Carver* does not expound on why a judicial bias attack would be barred, it appears here that such an attack falls squarely within the terms of Anderson's waiver. By arguing that judicial bias resulted in a disproportionately long sentence, Anderson essentially challenges the Court's determination of the appropriate sentence. Such a challenge falls within the waiver's prohibition on collateral attacks when the final sentence does not "vary upward

from the advisory sentence guidelines range." (Doc. 16 Ex. 1 at 8.) Judge Black pronounced a sentence below the guidelines range and within the range proscribed by the plea agreement, so this collateral attack is barred by the plea agreement's terms.

Anderson bears the burden of demonstrating that the enforcement of the waiver would result in a miscarriage of justice, but she does not raise this argument. Moreover, a review of the record reveals that none of the four exceptions apply to her judicial bias claim. The first factor invalidates a waiver when the Court considers an impermissible factor such as race. Anderson points to the comment regarding her privileged upbringing as revealing Judge Black's allegedly patent bias against the granddaughter of politicians (Doc. 15 at 2-3), but this cannot satisfy the first exception. The example of race suggests that the impermissible factor must be a characteristic of a protected or quasi-protected class. If the poor are not a protected class, *see Ortwein v. Schwab*, 410 U.S. 656, 660 (1973), I am hard-pressed to see how the economically privileged would benefit from such a status. Moreover, class tensions hardly compare to the destructive and deep history of racial animus in this nation, so it would be absurd to find that a comment about privilege[4] could have the same stigmatizing weight as a racist one.

The second factor does not apply to a judicial bias claim, and the third is also inapplicable, since Anderson did not receive a sentence in excess of the guidelines. Lastly, I see no apparent reason that the waiver is otherwise unlawful. Since none of the exceptions apply, I

---

[4] In *Carver*, the Tenth Circuit addressed the petitioner's claim of judicial bias even though it was barred by the waiver because the court believed that such a claim "could taint the reputation of the judiciary." 349 F. App'x at 294. While I need not address whether Judge Black's use of the term "privileged" reflects a bias against the wealthy or against the progeny of United States' senators, I will not let Anderson's allegation tarnish an otherwise excellent judicial reputation. Judge Black's comment is nothing more than an innocuous statement of fact based on the information before the Court. Anderson reported that she had always been provided for as a child and that she had a "great" childhood. (Doc. 15 Ex. 3 at 5.) The PSR indicated that at the time of sentencing she had two trust funds that placed her net worth above two million dollars. (*Id*. at 11.) Lastly, Anderson acknowledged that she had a privileged childhood in her letter to the Court. (Doc. 16 Ex. 2 at 3.) To characterize Judge Black's comment as anything other than an observation based on the information that Anderson had provided is simply wrong.

11

find that Anderson waived her right to collaterally attack her sentence through a claim of judicial bias at the sentencing phase.

**III.     Ineffective Assistance of Counsel**

Criminal defendants possess a constitutional right to the assistance of counsel in their defense. *See* U.S. CONST. amend. VI; *see also United States v. Washington*, 619 F.3d 1252, 1256 (10th Cir. 2010). This right attaches at all critical stages in a criminal prosecution, from pretrial interrogations about the charge through the sentencing process. *Kansas v. Ventris*, 556 U.S. 586, 590 (2010); *Washington*, 619 F.3d at 1258; *Williams v. Jones*, 571 F.3d 1086, 1091 (10th Cir. 2009). This also includes the plea bargaining stage. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

A successful claim of ineffective assistance of counsel requires the defendant to satisfy two prongs: (1) deficient performance by counsel (2) resulting in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A court may address performance and prejudice in any order, and failure to state a claim under either part of the test is dispositive. *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (citations omitted).

To show deficient performance at the plea bargaining stage, Anderson must demonstrate that Gorence's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. This requires a showing that the performance is "completely unreasonable, not simply wrong." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)). Judicial scrutiny of counsel's performance is highly deferential, and courts apply a strong presumption that the attorney acted within the range of "reasonableness." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 778 (2011); *Strickland*, 466 U.S. at 689. However, an attorney's failure to inform a defendant of a plea offer is considered

unreasonable and satisfies the deficient performance prong. *Missouri v. Frye*, --- U.S ---, 132 S. Ct. 1399, 1408 (2012.)

At the prejudice prong, Anderson must show that there is a reasonable probability that, but for Gorence's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. When the petitioner alleges that the counsel's deficient performance resulted in the acceptance of a plea agreement, the prejudice prong requires a showing "that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. But, when the allegedly deficient performance is a counsel's failure to inform the petitioner of a plea offer, the petitioner must demonstrate a reasonable probability that: (1) she would have accepted the earlier plea offer; (2) the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it; and (3) the plea would have been more favorable by reason of pleading to a lesser charge or a sentence of lesser time. *Frye*, 132 S. Ct. at 1409. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hill*, 474 U.S. at 59.

Anderson brings a bevy of ineffective assistance of counsel claims against Gorence in her first motion and in her supplemental motion; however, only three of her allegations warrant consideration here.[5] I begin with her contention that Gorence failed to negotiate a plea early on in her criminal proceedings with the purpose of misleading Anderson into believing trial was best so he could collect more fees. (Doc. 1 at 18.) Anderson's supplemental motion further

---

[5] A majority of the claims in Anderson's initial motion to vacate appear to be desultory allegations of ethical violations and not claims for constitutionally defective counsel. These claims include the allegations that Gorence assisted Anderson in evading rules of the halfway house, coerced her into paying legal fees for an individual named Kevin Garner, instructed her to send money to Garner through another attorney, engaged in an inappropriate intimate relationship with her, instructed her to pay someone named Joseph Gorence to go to Korea to pick up Anderson's dog, carried notes between Anderson and Garner, and induced another lawyer into violating the rules of professional conduct. (Doc. 1 at 17-18.)

13

elaborates that Gorence failed to notify her of two plea offers from the United States earlier in the case. (Doc. 15 at 6.) *Frye* makes it clear that a counsel has a duty to communicate all plea offers to his client, *see* 132 S. Ct. at 1408, so such actions would rise to the level of deficient performance. However, even if I accept Anderson's assertion that Gorence never informed Anderson of the earlier plea offers, Anderson cannot show prejudice. She does not claim that she would have taken those offers, that the Court would have accepted either of those offers, or that either offer would have been more favorable to her. In fact, Gorence's and the United States' statements during the sentencing hearing indicate that the earlier offers were for ten and fifteen years respectively (*see* Doc. 15 Ex. 1 at 8, 14-15), so neither could have resulted in a more favorable term of imprisonment. There is no evidence in the record that either offer would have been for a lesser charge, and Anderson does not claim as much. Rather, her basis for prejudice is that Gorence schemed to prolong the proceedings in order to collect a higher fee. (Doc. 1 at 17.) Again, even if I accept this as true, the Sixth Amendment does not protect a client's pocketbook from prejudice, so this cannot be the basis of a constitutional violation.

Anderson's second claim for ineffective assistance of counsel is that Gorence "instructed" her to plead guilty without advising her of the effects of her plea or explaining the sentencing guidelines and the maximum sentence. (Doc. 15 at 6.) Gorence allegedly led her to believe that she would get a lesser sentence than her co-defendants. (*Id.*) She insists that she would not have taken the plea agreement if she had been informed of the sentencing consequences. (*Id.* at 7.) Embedded in this claim are two allegations of deficient performance— that Gorence failed to explain the statutory maximum so she did not understand that she was subject to a ten year sentence, and that he gave her poor advice about the likely outcome of the sentence. Neither one amounts to a constitutional violation.

First, I consider Anderson's allegations that she did not understand the statutory maximum, so her plea was not knowing and voluntary. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As previously noted, when the record shows that the plea agreement clearly states the consequences of a guilty plea and the colloquy at the plea hearing verifies the petitioner's knowledge of those consequences, then the plea is considered knowing and voluntary. *Salas-Garcia*, 698 F.3d at 1254-55.

During Anderson's plea hearing, Judge Black performed a Rule 11 colloquy in which he asked Anderson if she had read the plea agreement (Doc. 16 Ex. 3 at 5), if she had any questions about the plea agreement (*id*. at 6), and if her attorney had spoken with her about the contents of the plea agreement (*id*. at 5). He also asked her specifically if she had read and understood the penalties to which she was subject under the agreement (*id*. at 6-7), including the possibility of imprisonment for up to ten years (*id*. at 7). Anderson responded affirmatively to all of his questions. (*Id*. at 5-7.) I doubt that Anderson was merely providing rote affirmative answers; at one point, she corrected Judge Black during the colloquy such that the record of the hearing properly reflected the facts contained in the plea agreement. (*Id*. at 13.) While her remark alone does not establish that the plea was knowing and voluntary, when viewed in light of all other facts, it severely undermines any notion that Anderson's colloquy amounted to the automatic recitation of affirmative responses per the instruction of her counsel. Based on Anderson's answers, Judge Black found that the plea was free and voluntary and accepted it. (*Id*. at 14.)

The record clearly creates a presumption that she knowingly and voluntarily accepted the plea and that she understood that the agreement included a maximum term of imprisonment of ten years. Since Anderson offers nothing to challenge the verity of her statements in Court aside from her conclusory statement that Gorence did not explain the maximum term, she has not pled sufficient facts to support the deficient performance prong.[6]

Alternatively, Anderson alleges that Gorence told her that she would not receive the maximum sentence but that she would get a lesser sentence based on the sentences of her co-defendants. An attorney's advice may be constitutionally deficient if it is completely unreasonable or clearly legally erroneous. *See Lafler v. Cooper*, --- U.S. ---, 132 S. Ct. 1376, 1384 (2012); *Williams*, 571 F.3d at 1091 (holding counsel's advice that client "would be committing perjury by accepting the plea offer" and threats to withdraw from the case if client accepted plea agreement amounts to deficient performance). However, where an attorney's advice is not legally erroneous but only wrong, the advice is not constitutionally deficient. *See Hatch*, 58 F.3d at 1459. Further, a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). While Gorence's alleged assurances that Anderson would receive a lesser sentence based on the sentences of her co-defendants may have been incorrect, this is not a basis for a Sixth Amendment violation. Therefore, Anderson's second claim for ineffective assistance of counsel must also fail.

Anderson's final ground for ineffective assistance is that Gorence did not object to the Court's reliance on outside information during the sentencing phase. (Doc. 15 at 6.) She believes

---

[6] Conclusory statements that allege both prongs of a sixth amendment violation will not only fail, but they will not even warrant an evidentiary hearing. *Hatch*, 58 F.3d at 1457. An allegation must contain specific and particularized facts in order to warrant a hearing. *Id*. Thus, I did not hold an evidentiary hearing on this claim since there was a presumption that her plea was voluntary and she had not pled specific facts to counter that presumption.

that Gorence's failure to object to Judge Black's comment that she had a "privileged upbringing" and his later statement that there are "people that we can prove have been killed by these weapons" amounts to ineffective assistance of counsel. (*Id.* at 7-8.) I note from the outset that I do not believe that Judge Black's comment about privilege was incorrect, so it would not warrant objection. I have previously discussed why I believe this to be a mere statement of fact based on the record. Anderson believes that because she was sexually assaulted twice as a minor that she did not have a privileged background. This is an argument of semantics. However, I believe it entirely reasonable to recognize that even children from privileged backgrounds can undergo serious trauma; the two are not mutually exclusive.

Turning to Judge Black's comments that the weapons had been used to kill, even if I accept that they were objectionable, and I am not convinced that they are, Anderson would have to show that there was a reasonable probability that, but for Gorence's failure to object, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Anderson only asserts that the failure to object led to "further error" (Doc. 15 at 7), but she does not claim, let alone demonstrate, how an objection could have led to a lower sentence.

Should I extrapolate that "further error" implies the pronouncement of a higher sentence, Anderson's statement is completely conclusory and contradicted by the record. During sentencing, Judge Black was deeply concerned with the seriousness of Anderson's offense, and he referenced the danger of the sale of guns over the border. (Doc. 15 Ex. 1 at 29.) Anderson pled guilty to the theft of over two hundred guns, five of which had been confiscated in Mexico by the Mexican military; whether those guns had been used to kill a human would not have overshadowed Anderson's connection to the cross-border illicit arms trade. Given Judge Black's

17

distress over the number of arms involved and the implications of selling illegal arms in a border region, an objection to his comments would not have likely changed his sentence.

Since Anderson has not argued facts that could possibly show that she was prejudiced by Gorence's failure to object to Judge Black's comments, she cannot prevail on her claim.

## CONCLUSION

Anderson's petition for habeas corpus is partially barred by the terms of her plea agreement. Her ineffective assistance of counsel claims are not barred, but they lack merit since she has failed to plead facts that meet both prongs of the constitutional analysis. I recommend that the Court deny Anderson's petition for a writ of habeas corpus (Doc. 1; Doc. 15) and dismiss her case with prejudice. I also recommend that a certificate of appealability not be issued.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ William P. Lynch*
William P. Lynch
United States Magistrate Judge